# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

MIKE E. SIMONS,

    Plaintiff

v.

DOUGLAS COUNTY SHERIFF'S OFFICE, et al.,

    Defendants

Case No.: 3:26-cv-00155-MMD-CSD

**Order**

Re: ECF Nos. 1, 1-1, 1-4

Plaintiff has filed an application to proceed in forma pauperis (IFP) (ECF No. 1), a pro se complaint (ECF No. 1-1), and a motion to stay proceedings (ECF No. 1-4).

## I. IFP APPLICATION

A person may be granted permission to proceed IFP if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1); *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) (stating that 28 U.S.C. § 1915 applies to all actions filed IFP, not just prisoner actions).

The Local Rules of Practice for the District of Nevada provide: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP]. The application must be made on the form provided by the court and must include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

"[T]he supporting affidavits [must] state the facts as to [the] affiant's poverty with some particularity, definiteness and certainty." *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981)

(quotation marks and citation omitted). A litigant need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

A review of the application to proceed IFP reveals Plaintiff cannot pay the filing fee; therefore, the application is granted.

## II. SCREENING

### A. Standard

"[T]he court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) tracks that language. As such, when reviewing the adequacy of a complaint under this statute, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) ("The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less

stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's Complaint**

In his *pro se* complaint filed pursuant to 42 U.S.C. § 1983, Plaintiff sues multiple Defendants for events that occurred during a roadside arrest. (ECF No. 1-1 at 2). Plaintiff sues (1) Douglas County Sheriff's Office; (2) Deputy Sheriff Tyree Holdridge; (3) Deputy Sheriff Richard Rodriguez; (4) Deputy Sheriff Keenan Copp; (5) Deputy Sheriff Sal Derosa; and (6) Deputy Sheriff Mark Brown.

The complaint alleges the following facts.

On March 6, 2024, Defendants seized Plaintiff on a public road without probable cause. Plaintiff was not "committing a crime or acting suspiciously." During the arrest, Holdridge applied a "forceful wrist compliance technique" upon Plaintiff, then proceeded to disarm

3

Plaintiff despite no showing of "threat or aggression." Holdridge and Rodriguez then placed Plaintiff in handcuffs and conducted an unlawful search. Finally, Plaintiff alleges that Holdridge committed "financial theft" while transporting Plaintiff and his property. He asserts that Holdridge turned off his body-worn camera during the transport, and that although Plaintiff had approximately $8,400 in cash at the time of transport, only $7,900 was accounted for during booking. (ECF No. 1-1 at 2.)

Plaintiff asserts that the defendants violated his rights under the First, Second, Fourth, Fourteenth, Fifth, Eighth, and Ninth Amendments. (*Id.* at 2-3).

1. Douglas County Sheriff's Office

A public agency is not a person or entity subject to suit unless that agency is a separate legal entity. *Hervey v. Estes*, 65 F.3d 784, 791-92 (9th Cir. 1995). Applying Federal Rule of Civil Procedure 17(b)[1], the Ninth Circuit has held that state law determines the issue of whether a department of a municipality may sue or be sued. *See e.g. Streit v. County of Los Angeles*, 236 F.3d 552, 565 (9th Cir. 2001).

In Nevada, each county (or incorporated city or town within the county) is a political subdivision of the state and an independent legal entity, which means it can sue or be sued. *See Clark County v. Lewis*, 88 Nev. 254, 498 P.2d 363, 365 (Nev. 1972); Nev. Rev. Stat. § 280.080; *id.* § 41.0305. A department of a county, city or town, however, "may not, in the department name, sue or be sued" without statutory authorization. *See Wayment v. Holmes*, 912 P.2d 816, 819 (Nev. 1996) (concluding that the "Washoe County District Attorney's office is not a suable entity because it is a department of Washoe County, not a political subdivision" and noting the

---

[1] Rule 17(b) states that capacity to sue or be sued (other than for an individual or corporation) is determined by the law of the state where the court is located. Fed. R. Civ. P. 17(b)(3).

State had not waived immunity on behalf of its departments of political subdivisions so the District Attorney's Office had not been conferred the power to sue or be sued) (citing Nev. Rev. Stat. § 41.031); *see also Wright v. City of Las Vegas,* 395 F. Supp. 2d 789, 794 (S.D. Iowa 2005); *Schneider v. Elko County Sheriff's Dep't*, 17 F.Supp.2d 1162, 1165 (D. Nev. 1998) (finding that Elko County Sheriff's Department lacked capacity to be sued).

If a plaintiff improperly names a city or county department that lacks capacity to be sued, the court may order the proper party (generally the county or city) be substituted into the case. *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015).

Douglas County Sheriff's Office lacks the capacity to be sued and must be dismissed.

Even assuming Plaintiff had named the correct entity -- Douglas County -- he has not stated any claim against it. A municipality, including a county, can be liable for the infringement of constitutional rights only under certain circumstances. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-95 (1978). A municipality may not be sued under a respondeat superior theory because it employed an alleged wrongdoer. *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 603 (9th Cir. 2019). Rather, a municipality may be liable under § 1983 for "constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise or discipline; or (4) a decision or act by a final policymaker." *Id.* at 602-03. "To impose liability on a municipality under Section 1983, a plaintiff must prove: "(1) [the plaintiff] had a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to [the plaintiff's] constitutional right; and (4) the policy is the moving force behind the constitutional violation." *Gordon v. County of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (Gordon II) (internal quotation marks and citation omitted).

The complaint does not allege that Plaintiff's injuries were the result of a custom, policy, failure to train, supervise or discipline, or a decision or act by a final policymaker. The complaint may not therefore proceed against Douglas County. However, should Plaintiff believe he could state a claim against the county, he will be granted leave to file an amended complaint naming the county and identifying the factual basis for its alleged liability.

2. First Amendment

Plaintiff asserts that defendants violated his First Amendment right to free speech. However, he identifies no facts to support this claim nor does he identify the theory upon which his claim is based. To the extent Plaintiff's claim is one of retaliation, he does not allege what protected conduct he engaged in, what adverse action the defendants took, or any facts to suggest a plausible claim that defendants' actions were taken because of Plaintiff's protected conduct.[2] Plaintiff's First Amendment claim is therefore dismissed, without prejudice, with leave to amend.

3. Second Amendment

"The Second Amendment is not implicated by the seizure of individual firearms." *Fairbanks v. O'Hagan*, 255 F. Supp. 3d 239, 245 (D. Mass. 2017); *see also Rodgers v. Knight*, 781 F.3d 932, 941–42 (8th Cir. 2015) ("Lawful seizure and retention of firearms, however, does

---

[2] To state a First Amendment retaliation claim, a plaintiff must plausibly allege that: (1) a state actor took adverse action against the plaintiff; (2) because of the plaintiff's protected conduct; (3) the adverse action chilled the plaintiff's exercise of First Amendment rights; and (4) the action did not reasonably advance a legitimate governmental objective. *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). The plaintiff must show "not only that the official acted with a retaliatory motive and that the plaintiff was injured, but also that the motive was a 'but-for' cause of the injury." *Nieves v. Bartlett*, 587 U.S. 391, 391 (2019). In a First Amendment retaliatory arrest claim, plaintiffs must generally plead and prove the absence of probable cause. *Hartman v. Moore*, 547 U.S. 250, 251 (2006) (holding that the existence of probable cause suggests the arrest would have occurred regardless of retaliatory motive).

6

not violate the Second Amendment. Indeed, this court has held that even the unlawful retention of specific firearms does not violate the Second Amendment, because the seizure of one firearm does not prohibit the owner from retaining or acquiring other firearms."). Even if seizure of single firearm could state a Second Amendment claim, the Second Amendment is not violated by the "mere occurrence of a firearm seizure"; a viable Second Amendment claim would require something more. *Jackson v. Fed. Bureau of Investigation*, 784 F. Supp. 3d 1260, 1271 (D. Ariz. 2025) (citing *Partin v. Gevatoski*, No. 6:19-CV-1948-AA, 2020 WL 4587386, at \*4 (D. Or. Aug. 10, 2020)); *see also Sutterfield v. City of Milwaukee*, 870 F. Supp. 2d 633, 642 (E.D. Wis. 2012), *aff'd*, 751 F.3d 542 (7th Cir. 2014).

Plaintiff alleges that Holdridge and Rodriguez violated his Second Amendment rights by disarming him during his detention. Although Plaintiff does not explicitly state as much, the facts alleged in the complaint support the reasonable inference that Plaintiff was arrested and transported to the station. "Given the arrest of the gun's owner . . . , public safety required the temporary seizure of the weapon." *Hopkins v. Claroni*, No. 1:13-CV-229-DBH, 2015 WL 2371654, at \*6 (D. Me. May 18, 2015) (citing *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). As alleged, Plaintiff has failed to state a colorable Second Amendment claim.

Rather than the Second Amendment, the seizure of Plaintiff's firearm is properly evaluated as a Fourth Amendment unreasonable seizure claim, which the court discusses *infra*. *See Graham v. Connor*, 490 U.S. 386, 395 (1989).

4. Ninth Amendment

The Ninth Amendment "has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim." *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986); *see also Bossart v. Cnty. of King*, No. 2:25-CV-00975-JNW,

2025 WL 2614110, at *2 (W.D. Wash. Sept. 10, 2025) ("This rule is well-established and forecloses any Section 1983 claim based solely on the Ninth Amendment."). Plaintiff's claims, to the extent they are asserted under the Ninth Amendment, must be dismissed.

5. Fifth Amendment

The Due Process Clause of the Fifth Amendment applies only to actions of the federal government—not to those of state or local governments. *Schweiker v. Wilson*, 450 U.S. 221, 227 (1981). Plaintiff's allegations lie against state and local actors and thus, to the extent they are asserted under the Fifth Amendment, must be dismissed.

6. Eighth Amendment

The Eighth Amendment prohibition of cruel and unusual punishment was designed to protect those convicted of a crime. *Whitley v. Albers*, 475 U.S. 312, 327 (1986) ("the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners"); *Hughes v. Rodriguez*, 31 F.4th 1211, 1221 (9th Cir. 2022) (Eighth Amendment applies to convicted prisoners (both inside and outside the walls of the prison)). The Eighth Amendment does not appear to apply to Plaintiff's claims and will therefore be dismissed.[3]

7. Fourteenth Amendment

Plaintiff asserts that his due process rights to be free from unreasonable force and deprivation of liberty without due process were violated.

Plaintiff's claim of unreasonable force and deprivation of liberty without due process are both properly evaluated under the Fourth, not the Fourteenth, Amendment. *Graham*, 490 U.S. at

---

[3] Plaintiff has separately raised a Fourth Amendment excessive force claim. The contentions that he might have been intending to raise under the cruel and unusual punishment clause will be evaluated in connection therewith.

395. Plaintiff's Fourteenth Amendment claim, to the extent it is based on unreasonable force and deprivation of liberty, will be dismissed.

8. Fourth Amendment

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. As noted above, Plaintiff's claims of search and seizure of his person, seizure of his property, and excessive force are all properly evaluated under the Fourth Amendment.

a. Search and Seizure of Person

The Fourth Amendment is violated when a person is unreasonably seized. *Graham,* 490 U.S. at 395-96; *see also Brower v. Cnty. of Inyo,* 489 U.S. 593, 595-600 (1989). In general, "every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause." *Michigan v. Summers*, 452 U.S. 692, 700 (1981). "Probable cause exists if the arresting officers had knowledge and reasonably trustworthy information of facts and circumstances sufficient to lead a prudent person to believe that [the arrestee] had committed or was committing a crime." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097-98 (9th Cir. 2013) (citation and quotation marks omitted).

However, even in the absence of probable cause, officers may stop and briefly detain a person for investigative purposes if they have "a reasonable suspicion supported by articulable facts for suspected criminal activity." *Terry v. Ohio,* 392 U.S. 1, 30 (1968). "The officer, of course, must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotation marks and citation omitted).

Where "a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant." *Riley v. California*, 573 U.S. 373, 382 (2014). "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Id.*

Plaintiff alleges that Defendants unlawfully and without probable cause seized and then searched him without probable cause, and that he was not committing a crime or acting suspiciously when they did so.

While Plaintiff might be able to state a claim for unreasonable search and seizure, the complaint at this juncture lacks sufficient facts to find a plausibly alleged claim. There is no explanation as to what Plaintiff was doing when he was stopped by the officers, what the officers claimed to be stopping him for, or why he was – evidently – placed under arrest and transported to the station. There is no sequence of events, which means it is unclear whether Plaintiff alleges that he was immediately arrested or whether the interaction began as a *Terry* stop before turning into an arrest.

The facts surrounding the "search" are also entirely unclear – such as when it happened during the sequence of events and what (if anything) was found as a result. Finally, the fact that Plaintiff was apparently arrested and booked raises the question of whether Plaintiff is currently facing any state charges arising out of the events about which he complains, and, if so, what those charges might be.[4] All of these facts are essential to evaluating whether Plaintiff has stated a colorable Fourth Amendment search and seizure claim that may proceed in this action.

---

[4] Plaintiff has filed a motion to stay proceedings on the grounds that he is awaiting the result of "related state court proceedings," which certainly suggests he is facing charges arising out of this incident, but because the "related state court proceedings" could be anything, the court cannot reasonably infer as much at this point.

Accordingly, Plaintiff's claim of a Fourth Amendment violation based on the search and seizure of his person will be dismissed without prejudice, with leave to amend.

b. Seizure of Property

As previously noted , the seizure of Plaintiff's firearm is properly evaluated as a Fourth Amendment claim. Plaintiff may also be claiming an unreasonable seizure of his cash, although that is less clear.

"A 'seizure' of property" within the meaning of the Fourth Amendment "occurs when 'there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 61 (1992). "Violation of the Fourth Amendment requires an intentional acquisition of physical control." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989). "A seizure conducted without a warrant is 'per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'" *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001). Determining whether a seizure is unreasonable requires balancing of the government's interest in seizing the property against the individual's interest in his property. *See, e.g., Lavan v. City of Los Angeles*, 693 F.3d 1022, 1030 (9th Cir. 2012).

"It's well established that 'a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests.'" *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017). "The Fourth Amendment 'is implicated by a delay in returning the property, whether the property was seized for a criminal investigation, to protect the public, or to punish the individual.'" *Id.* at 1197.

If the property seized is the basis of any pending criminal charges, a plaintiff may not assert an unreasonable seizure claim unless and until the charges are dismissed or resulting

conviction has been overturned. *See Harvey v. Waldron*, 110 F.3d 1008, 1115 (9th Cir. 2000), *overruled in part on other grounds by Wallace v. Kato*, 549 U.S. 384, 393-94 (2007).

For the same reasons discussed with respect to the search and seizure of his person, Plaintiff's seizure of property claim lacks sufficient factual allegations to state a plausible Fourth Amendment claim. Accordingly, the court will dismiss the Fourth Amendment unreasonable seizure of property claim, without prejudice, with leave to amend.

c. Excessive Force

Claims of excessive force during an arrest are also subject to an objective reasonableness standard. *Graham*, 490 U.S. at 395.

> In assessing the objective reasonableness of a particular use of force, [the court] consider[s]: (1) "the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted," (2) "the government's interest in the use of force," and (3) the balance between "the gravity of the intrusion on the individual" and "the government's need for that intrusion.

*Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017); *see also Bryan v. MacPherson*, 630 F.3d 805, 823–24 (9th Cir. 2010) ("Stated another way, we must 'balance the amount of force applied against the need for that force.'").

This inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 395 (citation omitted). The most important is "whether the subject posed an 'immediate threat to the safety of the officers or others.'" *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc) (quoting *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc)).

These factors are not exhaustive, and courts are "to examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case[.]'" *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (quoting *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)). Courts conduct their evaluation of reasonableness "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citation omitted).

"'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' ... violates the Fourth Amendment." *Id*. (citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments−in circumstances that are tense, uncertain, and rapidly evolving−about the amount of force that is necessary in a particular situation." *Id*. at 396-97.

Plaintiff asserts that Holdridge applied a "forceful wrist compliance technique" while Plaintiff was not engaging in threatening or aggressive behavior. Plaintiff could potentially state an excessive force claim, but on the facts alleged here he has not done so. The descriptor "forceful wrist compliance technique" provides no insight into the amount of force used, what the technique entailed, or whether Plaintiff suffered any injury.[5] While Plaintiff alleges that his left wrist was "overextended," he does not explain what this means in terms of injury and pain. These factors are key in evaluating whether Plaintiff has plausibly alleged a colorable Fourth Amendment excessive force claim. The lack of these facts means Plaintiff has failed to allege any colorable claim. Accordingly, the Fourth Amendment excessive force claim will be dismissed without prejudice, with leave to amend.

---

[5] Plaintiff also asserts he suffered "sternum pain," but it is unclear how, if at all, this is attributable to the "wrist compliance technique."

9. "Financial theft"

Plaintiff alleges that at the time of his arrest, he had $8,400, but at the time of booking, only $7,900 was documented. He also alleges that Holdridge turned off his body camera while transporting Plaintiff. The inference appears to be that Plaintiff believes Holdridge stole $500 from him during the transport to the station.

It is unclear whether Plaintiff intends to assert this as a constitutional claim or whether he alleges a state-law conversion claim. If Plaintiff intends to assert a constitutional claim, he must clearly identify it as such.[6]

As it stands, Plaintiff's allegations – minimal as they are – are sufficient to state a colorable claim of conversion under Nevada law.[7] However, this state law claim may proceed under the court's supplemental jurisdiction, if at all. As Plaintiff has not yet sufficiently alleged any claim over which this court has subject matter jurisdiction, his state-law conversion claim may not move forward at this time.

---

[6] It is not clear that Plaintiff would be able to state a constitutional claim. "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). "The availability of a tort suit, for defendants' random, unanticipated acts, satisfies the due process clause. *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1305 (9th Cir. 1989) (internal alterations and quotation marks omitted). Because Nevada law recognizes the tort claim of conversion, which is an adequate postdeprivation remedy, no Fourteenth Amendment due process claim could lie here.

While Plaintiff could possibly state a Fourth Amendment claim for the stolen money, defendants would, in all likelihood, be entitled to qualified immunity on such a claim. *See Gentry v. Manteca Police Dep't*, No. 2:22-CV-00720-DC-JDP, 2025 WL 2829423, at *7-9 (E.D. Cal. Oct. 6, 2025) (finding police officers entitled to qualified immunity as to allegation of stolen property because in 2020 it was not clearly established that theft of property violated the Fourth Amendment). *Cf. Jessop v. City of Fresno*, 936 F.3d 937, 940-42 (9th Cir. 2019).

[7] "Conversion is a distinct act of dominion wrongfully exerted over personal property in denial of, or inconsistent with, title or rights therein or in derogation, exclusion or defiance of such rights" *Edwards v. Emperor's Garden Rest.*, 130 P.3d 1280, 1287 (Nev. 2006).

14

10. Personal Participation

Section 1983 "creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the Constitution." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation[.]" *Id.* (citations omitted). In other words, the plaintiff "must show that each defendant personally played a role in violating the Constitution." *Hines v. Yousef*, 914 F.3d 1218, 1228 (9th Cir. 2019), *cert. denied sub nom., Smith v. Schwarzenegger,* 589 U.S. 928 (2019). "An official is liable under § 1983 only if 'culpable action, or inaction, is directly attributed to them.'" *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011)).

As it stands, the complaint alleges no personal participation in any constitutional violation by Copp, DeRosa, or Brown. Referring to "Defendants" as those responsible for seizing Plaintiff is insufficient to allege personal participation. Should Plaintiff seek to pursue his constitutional claims against these defendants, he should file an amended complaint clearly identifying the actions they took that contributed to the alleged violations of his constitutional rights.

### III. CONCLUSION

(1) Plaintiff's IFP application (ECF No. 1) is **GRANTED**.

(2) The Clerk shall **FILE** the Complaint (ECF No. 1-1).

(3) The Complaint is **DISMISSED WITHOUT PREJUDICE**, with leave to amend.

(4) The Clerk shall **SEND** Plaintiff the form and instructions for a civil rights complaint by a non-prisoner.

15

(5) Plaintiff has **30 DAYS** from the date of this Order to file a first amended complaint curing the deficiencies noted above. The first amended complaint must be complete in and of itself without referring to or incorporating by reference any previous complaint. Any allegations, parties, or requests for relief from a prior complaint that are not carried forwarded in the amended complaint will no longer be before the court. Plaintiff shall include this case number and "First Amended Complaint" in the caption of the complaint. If Plaintiff fails to file an amended complaint within 30 days, the court may recommend to the District Judge that this action be dismissed.

(6) The court will defer a recommendation on the motion to stay (ECF No. 1-4) pending screening of any amended complaint.

(7) In accordance with Plaintiff's request (ECF No. 4), the Clerk shall **SEND** Plaintiff a copy of the advisory letter issued on March 5, 2026, and all future filings to Plaintiff at his physical address 15050 Pinion Dr., Reno, NV 89521.

**IT IS SO ORDERED**.

Dated: July 6, 2026

_____
Craig S. Denney
United States Magistrate Judge

16