**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MIKE E. SIMONS,<br><br>Plaintiff<br><br>v.<br><br>DOUGLAS COUNTY SHERIFF'S OFFICE, et al.,<br><br>Defendants | Case No.: 3:26-cv-00155-MMD-CSD<br><br>**Report & Recommendation of United States Magistrate Judge** |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Plaintiff Mike Simons, proceeding pro se, has filed a first amended complaint (FAC). (ECF No. 7.) The FAC's allegations arise from the roadside arrest of Plaintiff's son, Damien Westerlund. Plaintiff asserts claims for First, Second, and Fourth Amendment violations as well as claims for conversion, false imprisonment, and failure to intervene.

After screening the FAC, the court recommends that the District Judge enter an order dismissing it in part and allowing it to proceed in part. Plaintiff has filed a separate motion for a stay, which the court recommends be denied. (EFC No. 1-4.)

## I. SCREENING

### A. Standard

"[T]he court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails

to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) tracks that language. As such, when reviewing the adequacy of a complaint under this statute, the court applies the same standard as is applied under Rule 12(b)(6). *See, e.g.*, *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) ("The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's Complaint**

In his *pro se* FAC filed pursuant to 42 U.S.C. § 1983, Plaintiff sues multiple Defendants for events that occurred during a roadside arrest. (ECF No. 7.) Plaintiff sues (1) Douglas County (2) Deputy Sheriff Tyree Holdridge; (3) Deputy Sheriff Richard Rodriguez; (4) Deputy Sheriff Keenan Copp; (5) Deputy Sheriff Salvatore DeRosa; and (6) Deputy Sheriff Mark Brown.

The complaint alleges the following facts.

At 9:20PM on March 6, 2024, Plaintiff's son, Damien Westerlund, and Johnathan Hollingsworth, left Plaintiff's shop to retrieve personal items from Plaintiff's car. (ECF No. 7, Ex. A.[1]) Deputy Holdridge observed Westerlund and Hollingsworth near the vehicle. Suspecting the men were burglarizing Plaintiff's car, Holdridge approached and asked the men to identify themselves.

Moments later, while waiting in the shop, Plaintiff received a call from Westerlund: "Dad there's a fucking cop on me get them off, there's a cop on me, he's choking me, get him off." (*Id.*) Plaintiff unholstered and chambered his firearm as he exited the shop. Before reaching Westerlund, Plaintiff decided to unchamber his weapon and re-holster it at his hip.

As Plaintiff approached, he saw Holdridge had seized Westerlund. Holdridge commanded Plaintiff to stand back. Plaintiff asserted that he was the owner of the vehicle and

[1] Many of Plaintiff's allegations are contained in his "Affidavit of Truth," which he has attached to the FAC as Exhibit A. Plaintiff has also attached transcripts of police worn body camera as Exhibit B. The court construes these exhibits as a continuation of the FAC. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

pleaded with Holdridge to release Westerlund. Holdridge refused, causing Plaintiff to grow irritated. He insulted Holdridge, calling him a "dumbass" and a "tyrant." (ECF No. 7, Ex. B at 5–6.)

Sensing that police would soon detain him, Plaintiff announced that he had a concealed carry weapon on his hip. Holdridge and Deputy Richard Rodriguez approached Plaintiff and began to detain him. While doing so, Holdridge forcefully twisted Plaintiff's left wrist as Rodriguez secured the firearm. Plaintiff "mocked" Rodriguez, who responded by aggressively slamming Plaintiff into a police car. (ECF No. 7, Ex. A.) Before transporting Plaintiff for booking at a local jail, officers seized $8,400 from Plaintiff's car.

After spending two hours in booking, officers returned Plaintiff's firearm and $7,900 of the $8,400 originally seized, before releasing him. The next day, Plaintiff and Westerlund went to the emergency room with "both their wrists blown out." (*Id.*) While at the hospital, Plaintiff received a call from Captain Rick Koontz Jr., who explained that if Westerlund had not said "fuck you" to Holdridge, "none of this would've happened." (*Id.*) Westerlund was prosecuted for obstructing a police investigation and was later acquitted.

On March 5, 2026, Plaintiff filed a complaint with this court. The court screened his complaint and dismissed it with leave to amend. (ECF No. 5.) On August 5, 2026, Plaintiff filed his FAC, which the court now screens.

**1. Fourth Amendment**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. As noted above, Plaintiff's claims of search and seizure of his person, seizure of his property, and excessive force are all properly evaluated under the Fourth Amendment.

**a. Search and Seizure of a Person**

The Fourth Amendment is violated when a person is unreasonably seized. *Graham,* 490 U.S. at 395-96; *see also Brower v. Cnty. of Inyo,* 489 U.S. 593, 595–600 (1989). In general, "every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause." *Michigan v. Summers*, 452 U.S. 692, 700 (1981). "Probable cause exists if the arresting officers had knowledge and reasonably trustworthy information of facts and circumstances sufficient to lead a prudent person to believe that [the arrestee] had committed or was committing a crime." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097–98 (9th Cir. 2013) (citation and quotation marks omitted). Whether police had probable cause to arrest is a mixed question of fact and law. *United States v. Buckner*, 179 F.3d 834, 837 (9th Cir. 1999).

Even without probable cause, the Fourth Amendment allows officers to stop and briefly detain a person for investigative purposes if they have "a reasonable suspicion supported by articulable facts for suspected criminal activity." *Terry v. Ohio,* 392 U.S. 1, 30 (1968). "The officer, of course, must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotation marks and citation omitted).

The facts alleged in the complaint support a plausible claim that Plaintiff was arrested without probable cause. Plaintiff asserts that he approached and engaged Holdridge and Rodriguez as they attempted to restrain an uncooperative Westerlund and verbally challenged their right to detain his son. While under these facts it is possible Plaintiff was arrested for "hinder[ing], delay[ing], or obstruct[ing]" an officer pursuant to Nevada Revised Statutes §

197.190, it is equally plausible that, under the totality of the circumstances, the officers did not have probable cause to detain and arrest Plaintiff for anything.

The court therefore recommends that Plaintiff's Fourth Amendment unreasonable seizure claim be allowed to proceed.

**b. Seizure of Property**

"A 'seizure' of property" within the meaning of the Fourth Amendment "occurs when 'there is some meaningful interference with an individual's possessory interests in that property.*" Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 61 (1992). "Violation of the Fourth Amendment requires an intentional acquisition of physical control." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989). "A seizure conducted without a warrant is 'per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'" *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001). Determining whether a seizure is unreasonable requires balancing of the government's interest in seizing the property against the individual's interest in his property. *See, e.g., Lavan v. City of Los Angeles*, 693 F.3d 1022, 1030 (9th Cir. 2012).

"It's well established that 'a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests.'" *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017). "The Fourth Amendment 'is implicated by a delay in returning the property, whether the property was seized for a criminal investigation, to protect the public, or to punish the individual.'" *Id.* at 1197.

Here, Plaintiff alleges that officers had no probable cause to seize his firearm during his arrest. According to Plaintiff, police booked him into a local jail and, after several hours, returned his firearm. On these facts, the FAC survives the screening standard. As the court

explained above, Plaintiff plausibly alleges that he was arrested without probable cause, which could support a claim that the resulting seizure of his firearm was unreasonable. The court therefore recommends that Plaintiff be allowed to proceed on his claim that his firearm was seized in violation of the Fourth Amendment.

**c. Excessive Force**

Claims of excessive force during an arrest turn on an objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989).

> In assessing the objective reasonableness of a particular use of force, [the court] consider[s]: (1) "the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted," (2) "the government's interest in the use of force," and (3) the balance between "the gravity of the intrusion on the individual" and "the government's need for that intrusion.

*Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017); *see also Bryan v. MacPherson*, 630 F.3d 805, 823–24 (9th Cir. 2010) ("Stated another way, we must 'balance the amount of force applied against the need for that force.'").

This inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 395 (citation omitted). The most important is "whether the suspect posed an 'immediate threat to the safety of the officers or others.'" *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc) (quoting *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc)).

These factors are not exhaustive, and courts are to "examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case[.]'" *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (quoting *Franklin v.*

*Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)). Courts conduct their evaluation of reasonableness "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citation omitted).

"'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' ... violates the Fourth Amendment." *Id*. (citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments−in circumstances that are tense, uncertain, and rapidly evolving−about the amount of force that is necessary in a particular situation." *Id*. at 396–97.

The FAC alleges that Holdridge applied a "wrist compliance technique" on Plaintiff before "slamming" him into a police vehicle. According to the FAC, Plaintiff's left wrist was "overextended," and he suffered from "sternum pain." Plaintiff also alleges that he went to the hospital to address a "blown out" wrist.

Liberally construing the FAC, Plaintiff sufficiently pleads a claim for excessive use of force. The FAC does not show the government held any significant interest in applying an aggressive wrist lock maneuver while also slamming Plaintiff into a police car. While Plaintiff's conduct may have frustrated the officers, frustration alone is not a viable reason to apply more force than reasonably necessary.

**2.** The court therefore recommends that Plaintiff's Fourth Amendment excessive force claim be allowed to proceed.**First Amendment**

To state a First Amendment retaliation claim, a plaintiff must plausibly allege that: (1) a state actor took adverse action against the plaintiff; (2) because of the plaintiff's protected conduct; (3) the adverse action chilled the plaintiff's exercise of First Amendment rights; and (4) the action did not reasonably advance a legitimate governmental objective. *Rhodes v. Robinson*,

408 F.3d 559, 567–68 (9th Cir. 2005). The plaintiff must show not only that the official acted with a retaliatory motive and that the plaintiff was injured, but also that the motive was a but-for cause of the injury. *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019).

In a First Amendment retaliatory arrest claim, plaintiffs must generally plead and prove the absence of probable cause. *Hartman v. Moore*, 547 U.S. 250, 251 (2006) (holding that the existence of probable cause suggests the arrest would have occurred regardless of retaliatory motive).

Here, the FAC alleges sufficient facts to survive screening. The FAC alleges that Plaintiff was exercising his First Amendment rights by voicing his frustrations with Holdridge and the other officers. As crude as Plaintiff's conduct may have been, it represented an "expression of disapproval toward a police officer" that the First Amendment protects. *Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1378 (9th Cir. 1990). And the fact that officers called Plaintiff to explain that they would not have forcibly arrested him had they not been insulted (by Plaintiff's words), suggests that police acted in retaliation.

Accordingly, the court recommends that Plaintiff's First Amendment claim against Holdridge and Rodriguez be allowed to proceed.

**3. Conversion**

"Conversion is a distinct act of dominion wrongfully exerted over personal property in denial of, or inconsistent with, title or rights therein or in derogation, exclusion or defiance of such rights" *Edwards v. Emperor's Garden Rest.*, 130 P.3d 1280, 1287 (Nev. 2006).

A citizen cannot lodge a claim against a state without the state's consent. *Bird v. Oregon Comm'n for the Blind*, 22 F.4th 809, 814 (9th Cir. 2022). Nevada law bars tort claims arising out

of an officer's (1) "execution of a statute or regulation" or (2) "performance . . . [of a] discretionary function." NRS 41.032(1)–(2).

Here, Plaintiff asserts that Holdridge committed conversion by taking possession of $500 of Plaintiff's $8,400 found at the scene. As the court concluded in its initial screening order, while Plaintiff's allegations are bare, he states a colorable claim for conversion. It is at least plausible that Holdridge had no basis for retaining Plaintiff's money. Thus, Nevada law does not bar Plaintiff's claim at this stage.

The court therefore recommends Plaintiff be allowed to proceed with his state law conversion claim, provided that he has also sufficiently stated at least one colorable federal claim over which this court has jurisdiction.

**4. False Imprisonment**

To prevail on a claim of false imprisonment under Nevada law, a plaintiff must show that the police "lacked probable cause to arrest him." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011); *see also Nelson v. City of Las Vegas*, 665 P.2d 1141, 1143–44 (Nev. 1983).

Because the FAC plausibly alleges that Holdridge lacked probable cause to arrest Plaintiff, the court recommends that Plaintiff's claim for false imprisonment be allowed to proceed.

**5. Second Amendment**

"The Second Amendment is not implicated by the seizure of individual firearms." *Fairbanks v. O'Hagan*, 255 F. Supp. 3d 239, 245 (D. Mass. 2017); *see also Rodgers v. Knight*, 781 F.3d 932, 941–42 (8th Cir. 2015) ("Lawful seizure and retention of firearms, however, does not violate the Second Amendment. Indeed, this court has held that even the unlawful retention of specific firearms does not violate the Second Amendment, because the seizure of one firearm

does not prohibit the owner from retaining or acquiring other firearms."). Even if seizure of single firearm could state a Second Amendment claim, the Second Amendment is not violated by the "mere occurrence of a firearm seizure"; a viable Second Amendment claim would require something more. *Jackson v. Fed. Bureau of Investigation*, 784 F. Supp. 3d 1260, 1271 (D. Ariz. 2025) (citing *Partin v. Gevatoski*, No. 6:19-CV-1948-AA, 2020 WL 4587386, at *4 (D. Or. Aug. 10, 2020)); *see also Sutterfield v. City of Milwaukee*, 870 F. Supp. 2d 633, 642 (E.D. Wis. 2012), *aff'd*, 751 F.3d 542 (7th Cir. 2014).

Plaintiff alleges that Rodriguez violated his Second Amendment rights by disarming him during his detention. "Given the arrest of the gun's owner . . . , public safety required the temporary seizure of the weapon." *Hopkins v. Claroni*, No. 1:13-CV-229-DBH, 2015 WL 2371654, at *6 (D. Me. May 18, 2015) (citing *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). As alleged, Plaintiff has failed to state a colorable Second Amendment claim. Rather than the Second Amendment, the seizure of Plaintiff's firearm is properly evaluated as a Fourth Amendment unreasonable seizure claim, which the court discussed above. *See Graham v. Connor*, 490 U.S. 386, 395 (1989).

Accordingly, because Plaintiff has already been afforded an opportunity to amend the complaint to state this claim, the court recommends that Plaintiff's Second Amendment claim be dismissed with prejudice.

**6. Douglas County**

A municipality, including a county, can be liable for the infringement of constitutional rights only under certain circumstances. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–95 (1978). A municipality may not be sued under a respondeat superior theory because it employed an alleged wrongdoer. *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 603 (9th Cir.

2019). Rather, a municipality may be liable under § 1983 for "constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise or discipline; or (4) a decision or act by a final policymaker." *Id.* at 602-03. "To impose liability on a municipality under Section 1983, a plaintiff must prove: "(1) [the plaintiff] had a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to [the plaintiff's] constitutional right; and (4) the policy is the moving force behind the constitutional violation." *Gordon v. County of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (Gordon II) (internal quotation marks and citation omitted).

A municipality's failure to train its employees "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). There must be a direct causal link between the failure to train and the injury suffered by the plaintiff. *Id.* at 391. Deliberate indifference requires a "showing that the facts available to the [defendant] put it on actual or constructive notice that its practices … were substantially certain to result in the violation of the constitutional rights of [its] citizens." *Sandoval v. County of San Diego*, 985 F.3d 657, 682 (9th Cir. 2021) (citation and quotation marks omitted). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citation and quotation marks omitted); *see also Hyde v. City of Willcox*, 23 F.4th 863, 874-75 (9th Cir. 2022) ("While deliberate indifference can be inferred from a single incident 'when the unconstitutional consequences of failing to train' are patently obvious, …, an inadequate training policy itself cannot be inferred from a single incident.").

At the pleading stage, a claim "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts" to provide the opposing party with fair notice to defend itself. *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (citations and quotation marks omitted).

The FAC alleges that Douglas County failed to train its officers to investigate potential crime, to de-escalate tense encounters with the public, and to report fellow officers who violate the law. But these assertions are conclusory and lack factual enhancement. Plaintiff relies on generalized assertions that officers have a duty to adhere to the law and to preserve the peace. Yet he fails to point to any policy, practice, or pattern by Douglas County that could establish its deliberate indifference to the constitutional violations caused by any alleged failure to train. Plaintiff's vague and indeterminate allegations will not suffice to state a claim.

Accordingly, because Plaintiff has already been afforded an opportunity to amend the complaint to state this claim, the court recommends that Plaintiff's claim against Douglas County be dismissed with prejudice.

**7. Duty to Intervene**

"Section 1983 imposes liability on '[e]very person who … subjects, or causes [a plaintiff] to be subjected … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *Peck v. Montoya*, 51 F.4th 877, 888–89 (9th Cir. 2022). "In some situations, the Constitution may impose on an officer a duty to intervene to prevent an ongoing constitutional violation." *Id*. at 889 (citing *Koon v. United States*, 518 U.S. 81 (1996)); *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000).

"But in general, one does not 'subject' someone to a deprivation of a constitutional right—or 'cause [someone] to be subjected' to such a deprivation—simply by watching others

violate the Constitution." *Id*. "To be liable under § 1983, a defendant official 'must be more than a mere bystander.'" *Id*. (quoting *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020)). "[A]n official whose 'individual actions' do 'not themselves rise to the level of a constitutional violation' may be held liable under § 1983 only if the official is an 'integral participant' in the unlawful act." *Id*.

While the Ninth Circuit has not "define[d] the minimum level of involvement for liability under the integral-participant doctrine," "precedents have permitted liability in two situations: those in which (1) the defendant knows about and acquiesces in the constitutionally defective conduct as part of a common plan with those whose conduct constitutes the violation or (2) the defendant 'set[s] in motion a series of acts by others which [the defendant] knows or reasonably should know would cause others to inflict the constitutional injury.'" *Id*. (quoting *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978) and citing *Buck v. City of Albuquerque*, 549 F.3d 1269, 1279–80 (10th Cir. 2008)); *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 560–61 (1st Cir. 1989)).

Plaintiff alleges that Rodriguez, along with deputies Copp, DeRosa, and Brown, violated a duty to intervene by failing to investigate Holdridge's conduct. As to Copp, De Rosa, and Brown, the FAC's allegations are conclusory and lack sufficient factual enhancement. The FAC fails to show that any of these defendants knew of or participated in the alleged constitutional violations.

Plaintiff has already been afforded an opportunity to amend the complaint to state a colorable claim against Defendants Copp, DeRosa, and Brown, and he has failed to do so. Accordingly, it is recommended that Plaintiff's failure to intervene claims against Copp, DeRosa, and Brown be dismissed with prejudice.

As to Rodriguez, the complaint plausibly alleges that he was an integral participant in many of the alleged constitutional violations. The court therefore recommends this claim be allowed to proceed against defendant Rodriguez.

**C. Motion for Stay**

"Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109–10 (9th Cir. 2005) (quoting *Landis v N. Am. Co*, 299 U.S. 248, 255 (1936)). Before the Court stays one case pending the outcome of another, it must consider: (1) the damage that may result from granting a stay; against the (2) hardship or inequity the other side may face in being required to move forward; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.* at 1110 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

Moreover, "[a] stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Id.* at 1111 (quoting *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979)). The Court should generally only grant stays of short, reasonable, and fixed durations. *See Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1067 (9th Cir. 2007).

Plaintiff asks the court to grant a stay to give him additional time to research federal law and acquire evidence. He also requests additional time to allow "related state court proceedings" to resolve. But these are not proper grounds to issue a stay. First, the events underlying this action occurred over two years ago; this is more than sufficient time to research federal law.

Second, Plaintiff's request for additional discovery time is premature; discovery has not yet begun. Lastly, Plaintiff fails to provide sufficient details for how the resolution of state proceedings impacts the case before this court.

Accordingly, the court recommends that Plaintiff's motion for a stay be denied.

## II. CONCLUSION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order allowing the FAC to proceed with claims for:

(1) Fourth Amendment unlawful seizure claim against Deputy Holdridge;

(2) Fourth Amendment excessive force claim against Deputies Holdridge and Rodriguez;

(3) First Amendment retaliation claim against Deputy Holdridge and Deputy Rodriguez;

(4) Conversion against Deputy Holdridge;

(5) False Imprisonment against Deputy Holdridge;

(6) Failure to Intervene against Defendant Rodriguez.

**IT IS FURTHER RECOMMENDED** that the District Judge enter an order **DISMISSING WITH PREJUDICE** the FAC's claims for:

(1) Second Amendment violation against Deputies Holdridge and Rodriguez;

(2) Failure to Intervene by Deputies Copp, DeRosa, and Brown;

(3) Failure to Train against Douglas County.

**IT IS FURTHER RECOMMENDED** that Defendants Copp, DeRosa and Brown be **DISMISSED** from this action with prejudice.

**IT IS FURTHER RECOMMENDED** that Plaintiff's motion for a stay be denied. (ECF No. 1-4.)

Plaintiff should be aware of the following:

1. That he may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge. Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

**IT IS SO ORDERED**.

Dated: September 25, 2026

Craig S. Denney
United States Magistrate Judge