__Filed __Received __Entered __Served On
Counsel/Parties of Record

OCT - 8 2026

Clerk US District Court
District of Nevada
By: ________ Deputy

# UNITED STATES DISTRICT COURT
**For the District of Nevada**
**Civil Division**

MIKE SIMONS,
**Pro Se Plaintiff,**

**Vs.**
DOUGLAS COUNTY MUNICIPALITY
& DEPUTIES at el

**Defendants,**

**OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**Case No.** 3:26-cv-00155-CSD

**OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION Case No.**3:26-cv-00155-CSD

Plaintiff Mike Simons, proceeding *pro se*, hereby submits these Objections to the Magistrate Judge's Report and Recommendation ("R&R") issued by Magistrate Judge Craig S. Denney. The R&R contains material factual misstatements, omissions, and overt fabrications that directly contradict the well-pleaded facts in Plaintiff's First Amended Complaint (FAC). A magistrate judge must accept the factual allegations in a complaint as true when evaluating a motion to dismiss. Instead, Judge Craig S. Denney has improperly rewritten the record, invented facts out of whole cloth, and mischaracterized Plaintiff as a public safety threat to shield the unlawful actions of the police. Plaintiff objects to the R&R on the following specific grounds:

**Objection No. 1: Fabrication of Facts Not Contained in the FAC**

**R&R Statement (Page 3, Lines 13–15):** *"Deputy Holdridge observed Westerlund and Hollingsworth near the vehicle. Suspecting the men were burglarizing Plaintiff's car, Holdridge approached and asked the men to identify themselves."*

**Basis for Objection: This statement does not exist anywhere within the FAC.** Judge Craig S. Denney has impermissibly introduced an unpled defense narrative into the R&R to fabricate reasonable suspicion for Deputy Holdridge's initial presence and subsequent use of force. The court cannot invent facts to aid the defense.

**Objection No. 2: Mischaracterization of Plaintiff's Defensive Movements**

**R&R Statement (Page 3, Lines 18–19):** *"Before reaching Westerlund, Plaintiff decided to unchamber his weapon and re-holster it at his hip."*

**Basis for Objection:** This clinical summary completely strips away the critical context and timeline explicitly pled on Page 1, Lines 3–8 of the FAC. The FAC establishes that Plaintiff acted under extreme duress after receiving a frantic call from his son, Damien, stating: *"Dad there's a fucking cop on me get them off... he's choking me..."* The FAC clearly notes that Plaintiff unchambered his firearm *specifically* because he heard Damien screaming, realized that *"screaming is breathing,"* and deliberately neutralized any perceived threat profile *while still at a distance*, long before reaching the immediate scene. The R&R alters this timeline to make Plaintiff's handling of the weapon appear immediate and threatening.

**Objection No. 3: Fabrication of Defiance and Distortion of Compliance**

**R&R Statement (Page 3–4, Lines 20–2):** *"As Plaintiff approached, he saw Holdridge had seized Westerlund. Holdridge commanded Plaintiff to stand back. Plaintiff asserted that he was the owner of the vehicle and pleaded with Holdridge to release Westerlund. Holdridge refused, causing Plaintiff to grow irritated. He insulted Holdridge, calling him a "dumbass" and a "tyrant"."*

`**Basis for Objection:** This narrative is completely falsified. Page 1, Lines 8–11 of the FAC explicitly states that while Plaintiff was *"about fifty five feet from Damien, Mike was unlawfully ordered to stay right where he was by Deputy Holdridge, to which Mike complied hoping it would help Damien."* Plaintiff did not defy commands or advance aggressively; he fully complied and stood 55 feet away while announcing his vehicle ownership and paternal relationship. The R&R invents an active, confrontational dispute to justify the subsequent excessive force.

**Objection No. 4: Misstatement of Detention Mechanics, Vehicle Location, and Use of Force**

**R&R Statement (Page 4, Lines 4–9):** *"sensing that police would soon detain him, Plaintiff announced that he had a concealed carry weapon on his hip. Holdridge and Deputy Richard Rodriguez approached Plaintiff and began to detain him. While doing so, Holdridge forcefully twisted Plaintiff's left wrist as Rodriguez secured the firearm. Plaintiff "mocked" Rodriguez, who responded by aggressively slamming Plaintiff into a Police car. Before transporting Plaintiff for booking at a local jail, officers seized $8,400 from Plaintiff's car."*

**Basis for Objection:** This summary distorts the violent mechanics of the assault and errors on physical facts.

**1. Compliance:** The FAC states (Page 1, Lines 15–27) that Plaintiff preemptively placed his hands behind his back *before* announcing his CCW, demonstrating full submission.

**2. Injury/Bracing:** The R&R omits that Deputy Rodriguez's fingers were trapped inside Plaintiff's palm as Plaintiff braced for the intense pain caused by Deputy Holdridge's approach and unlawful contact.

**3. The Vehicle:** Deputy Rodriguez slammed Plaintiff into the tailgate of Deputy Holdridge's truck..

**4. The Money:** The R&R implies the $8,400 was seized from the car concurrently during booking, whereas the FAC links the arrest to a continuous pattern of unlawful conduct where officers ignored plate checks and proper Procedures, no vehicle searches accord during this action of events.

**Objection No. 5: False Attribution of Non-Existent Pleadings**

**R&R Statement (Page 5, Lines 19–21):** *"Plaintiff asserts that he approached and engaged Holdridge and Rodriguez as they attempted to restrain an uncooperative Westerlund and verbally challenged their right to detain his son."*

**Basis for Objection: This statement is completely false and does not exist within the FAC.** Plaintiff never pled that he "engaged" the deputies during the restraint, nor did he plead that his son Westerlund was "uncooperative." The FAC repeatedly shows Plaintiff complying from a distance of 55 feet. The R&R fabricated this statement to construct a false narrative of I interference.

**Objection No. 6: Unjust Characterization of Plaintiff as a Public Safety Threat (Property Delay)**

**R&R Statement (Page 6, Lines 18–20):** *"The Fourth Amendment 'is implicated by a delay in returning the property, whether the property was seized for a criminal investigation, to protect the public, or to punish the Individual.'"*

**Basis for Objection:** By frameset-linking the seizure of Plaintiff's property to the phrase *"to protect the public,"* Judge Criag S. Denney improperly characterizes Plaintiff as a public safety concern. This flips the reality of the situation on its head: the only threat to public safety on the scene was the unlawful police presence and the unauthorized, violent assault on Plaintiff and his son.

**Objection No. 7: Unwarranted Application of *Graham* Threat Factors**

**R&R Statement (Page 7, Lines 14–20):** Quoting *Graham v. Connor*, 490 U.S. at 395, and *Mattos v. Agarano*, 661 F.3d at 441, emphasizing that the most important factor is *"whether the suspect posed an immediate threat to the safety of the officers or others."*

**Basis for Objection:** Plaintiff strongly objects to the application of these specific definitions to his conduct. Highlighting "immediate threat to safety" in the context of Plaintiff's actions serves no purpose other than to maliciously paint a compliant, legally armed CCW holder—who was standing 55 feet away with his hands behind his back—as a dangerous threat. It ignores the pled facts to insulate the defendants from their clear use of excessive force.

**Objection No. 8: Improper Hindsight Evaluation Shielding Lawless Officers**

**R&R Statement (Page 7, Lines 21–22):** Quoting *Bryan v. Macpherson*, 630 F.3d 805, 826 (9th Cir. 2010), noting courts evaluate reasonableness *"from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."*

**Basis for Objection:** The court must be reminded that its evaluation must follow the *face of the facts* as set forth in the FAC and core evidence. Judge Craig S. Denney misapplies this standard to view the scene through the eyes of an officer committing violence under color of law, creating a hypothetical, criminalized version of Plaintiff. The "perspective of a reasonable officer" cannot be used to completely overwrite the factual reality that Plaintiff was a non-threatening, cooperative bystander standing 55 feet away.

**Objection No. 9: Abuse of the "Split-Second Judgment" Standard Where a Duty to Intervene Existed**

**R&R Statement (Page 8, Lines 5–8):** *"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgements-in circumstances that are tense, uncertain, and rapidly evolving..."*

**Basis for Objection:** This statement fails on its face under the facts pled. The situation was tense and rapidly evolving solely because the officers failed in their affirmative duty to intervene to prevent constitutiona violations and violence against Westerlund and the Plaintiff. A dynamic cannot be labeled "uncertain" to excuse officer misconduct when the officers themselves are the lawless catalysts creating the danger.

**Objection No. 10: Glaring Internal Contradictions Regarding Vehicle and Force Details**

**R&R Statement (Page 8, Lines 9–12):** *"The FAC alleges that Holdridge applied a "wrist compliance technique" on Plaintiff before "slamming" him into a Police vehicle. According to the FAC, Plaintiff also alleges that he went to the hospital to address a "blown out" wrist."*

**Basis for Objection:** The R&R contains direct internal contradictions. The FAC does *not* state that Deputy Holdridge slammed Plaintiff against a "police vehicle." Rather, Deputy Rodriguez slammed Plaintiff into the tailgate of Deputy Holdridge's truck. By misstating who executed the force and where it occurred, the R&R confirms why this court must analyze the circumstances strictly from the four corners of the FAC and the core evidence brought forth, rather than standard boilerplate summaries.

**Objection No. 11: Erroneous Dismissal of Conversion Claim Involving Theft for Personal Gain**

**R&R Section:** *"Conversion Claim"* (recommending dismissal of the property claim).

**Basis for Objection:** Plaintiff objects to the dismissal of his conversion claim. Federal law strictly prohibits public officers from taking and retaining citizens' private property for personal gain or outside authorized legal channels. The seizure of $8,400 from Plaintiff's person—unrelated to any crime, plate check, or lawful investigation—constitutes an unlawful conversion under color of law that cannot be summarily dismissed at the pleading stage.

**Objection No. 12: Misapplication of Second Amendment Standards to Justify Armed Disarmament Without Cause**

**R&R Statement (Page 10–11, Lines 19–10):** Citing *Fairbanks*, *Rodgers*, and *Jackson*, asserting that the Second Amendment is not violated by the *"mere occurrence of a firearm seizure"* and that the seizure of a single firearm does not implicate the right to keep and bear arms.

**Basis for Objection:** This legal conclusion fails under the text of the Second Amendment, which explicitly guarantees the right to *"keep and bear arms."* Because Plaintiff was wrongfully detained and arrested without probable cause, the seizure of his firearm was completely unjustified. The text of the Constitution does not allow an exception for the "unlawful retention of specific firearms." Stripping a legal CCW holder of his weapon during a completely lawless arrest constitutes both a distinct Second Amendment violation and a Fourth Amendment violation

A. The Seizure and Retention of the Firearm Violates the Fourth Amendment. The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. Const. amend. IV. A seizure is per se unreasonable if it occurs during an arrest made without probable cause. See Wong Sun v. United States, 371 U.S. 471, 484–85 (1963). Because Plaintiff was wrongfully detained and arrested without probable cause, the initial seizure of his firearm was completely unjustified and constitutes a distinct constitutional violation. Furthermore, under Nevada law, an individual aggrieved by an unlawful search and seizure is entitled to the immediate return of their property. NRS 179.085. The continued, "unlawful retention" of the firearm is a rolling violation of Plaintiff's possessory rights.

B. The Unlawful Retention of the Firearm Infringes Upon Plaintiff's Second Amendment Rights. The Second Amendment explicitly guarantees that the right of the people to "keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Under the controlling standard established in New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022), when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government bears the burden to justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Id. at 24 There is no historical exception in the text of the Constitution or American tradition for the "unlawful retention of specific firearms" stripped from a legal holder during a lawless arrest. Stripping a lawful gun owner of his weapon during a completely unauthorized arrest, and refusing to return it, constitutes an independent and ongoing infringement of his right to "keep" arms.

**Objection No. 14: Municipal Failure to Train Claim Substantiated by Deputy H's Admissions**

**R&R Statement (Page 12, Lines 9–13):** Quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), stating there must be a direct causal link between a municipality's failure to train and the injury suffered.

**Basis for Objection:** The causal link required by *City of Canton* is fully satisfied here. Plaintiff respectfully objects to Defendant's assertion that Plaintiff has failed to establish a causal link between the municipality's training deficiencies and the constitutional violations. Under well-established federal law, a municipality may be held liable under 42 U.S.C. § 1983 for a failure to train its employees when that failure amounts to "deliberate indifference to the rights of persons with whom the [deputies] come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). To satisfy the causation requirement, the plaintiff must demonstrate that the injury was a "direct result" of the inadequate training program. Id. at 385; see also Flores v. County of Los Angeles, 758 F.3d 1154, 1157 (9th Cir. 2014). Where a state court action is maintained, Nevada courts apply this identical federal standard to evaluate municipal liability. See Olivero v. Lowe, 116 Nev. 395, 399, 995 P.2d 1023, 1026 (2000). Here, the required causal link is fully satisfied. The systemic failure to train is directly proven by the sworn testimony made by Deputy Holdridge during the wrongful prosecution of Westerlund. Deputy Holdridge's own statements regarding his actions on the scene serve as direct evidence that the municipality failed to instruct its deputies on proper detention protocols, use of force limits, and intervention mandates. Deputy Holdridge's testimony establishes that his unconstitutional conduct was not an isolated, rogue incident, but rather the highly predictable and direct consequence of a complete absence of institutional training on basic constitutional boundaries.

**Legal Basis:** NRS 171.1455 NRS 171.1455 Use of deadly force to effect arrest: Limitations.

1. A peace officer shall use de-escalation techniques and alternatives to the use of force whenever possible or appropriate and consistent with his or her training, including, without limitation, advisements, warnings, verbal persuasion and other tactics. If it is necessary for the peace officer to use force, the peace officer must:

(a) If it is possible to do so safely, identify himself or herself as a peace officer through verbal commands, visual identification, including, without limitation, a clearly marked uniform or vehicle, or other reasonable means; and

(b) Use only the level of force that is objectively reasonable under the circumstances to bring an incident or person under control and safely accomplish a lawful purpose. The level of force used by the officer must, to the extent feasible:
(1) Be balanced against the level of force or resistance exhibited by the person; and
(2) Be carefully controlled.

**Objection No. 15: Flawed Legal Analysis Excusing Bystander Officers from the Duty to Intervene**

**R&R Statement:** *"in some situations, the Constitution may impose on an officer a duty to intervene to prevent an ongoing constitutional violation." Id. at 889 (citing Koon v. United States, 518 U.S. 81 (1996)); Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000). But in general, one does not 'subject' someone to a deprivation of a constitutional right---or 'cause [someone] to be subjected' to such a deprivation---simply by watching others violate the Constitution."*

**Basis for Objection:** Plaintiff strongly objects to this legal characterization. Judge Craig S. Denney's analysis creates an unacceptable and legally incorrect double standard: it advances the general idea that an officer can only be held liable for a failure to intervene if they physically participate in the violation, while simultaneously shielding an on-scene officer who simply stands by and watches the constitutional injury unfold. The duty to intervene is rendered entirely hollow if an officer can escape liability by acting as a passive spectator to police brutality and lawless detentions.

**Legal Basis:** Cunningham v. Gates, 229 F3d 1271, 1289 (9th Cir. 1994): "[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." United States v. Koon, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994): Permitting liability under a theory that an officer's deliberate indifference and failure to prevent a constitutional violation by another officer acts as a direct cause of the injury. Additionally NRS §193.355 dictates that a peace officer shall, without regard for chain of command, intervene to prevent or stop another peace officer from using physical force that is not justified. Standing by passively when excessive force is applied is a direct violation of Nevada statutory duties. Also see NRS 193.308 and NRS 193.350.

---

## CONCLUSION AND NOTICE TO THE DISTRICT COURT

5 U.S.Code § 3331 requires federal civil service and uniformed service employees to take a specific oath of office upon election or appointment, anyone elected for appointment to an office of honor or profit in the U.S. civil service or uniformed services,

Plaintiff respectfully informs this Honorable Miranda M. Du, United State District Judge that the Magistrate Judge's Report and Recommendation does not reflect the actual record or the complaint filed in this case. It operates instead as a defense brief constructed by the court to protect the Defendants. Because the R&R relies on fabricated actions, omitted timelines, and distorted legal frameworks that actively contradict the face of the facts, Plaintiff respectfully requests that this Honorable Court reject the R&R in its entirety, accept the allegations of the FAC as true, and allow Plaintiff's constitutional claims to proceed.

Respectfully submitted, Mike Simons, *Pro Se Plaintiff*

Dated: October 7, 2026

---